IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BILLIE JO JOHNS,<br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>ASMC, AMBULANCE SERVICE<br>MANAGEMENT CORPORATION,<br>　　　　　Defendant. | )<br>)<br>)<br>)<br>) 2:16-cv-36<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

Pending before the Court is DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED.R.CIV.P. 12(b)(6) filed by Defendant, Ambulance Service Management Corporation ("ASMC"). ECF No. 3. The motion has been fully briefed and is ripe for disposition. ECF Nos. 4, 6.

### I.　Background

Plaintiff alleges that she was employed by Defendant as an emergency medical technician from September 7, 2013, until March 31, 2014. Compl. ¶ 3, ECF No. 1-2. On an unspecified date, she filed a protection from abuse ("PFA") complaint against an unidentified male employee of Defendant. *Id.* ¶ 4. Thereafter, she claims that Defendant violated Title VII, 42 U.S.C. § 2000e *et seq.*, "by making the Plaintiff's job impossible for her to perform, by treating her differently than male employees: constantly criticizing her; watching her; and, complaining to her about inconsequential matters, thereby constructively discharging her, in retaliation for filing" the PFA complaint. *Id.* She further claims that she was "told that it was wrong for her to file such a matter against a male employee, and that she should have let [Defendant] 'handle' it," *id.* ¶ 5, and was called "in for meetings to discuss non-existent problems with her performance" – something that

1

was never done before she filed the PFA complaint, *id.* ¶ 7. In addition, Plaintiff alleges, Defendant "initially promised that the male employee would not work with the Plaintiff," but then Defendant "repeatedly violated that promise, as it has an unwritten policy of favoring male employees and penalizing female employees who dare to file for a [PFA] order." *Id.* ¶ 7. Plaintiff claims that "[i]t became clear to [her] that Defendant would not allow her to continue to work there when she was criticized for matters that other employees were not." *Id.* ¶ 8. "As a result," Plaintiff alleges that she was "forced to leave her employment." *Id.* ¶ 9.

Plaintiff initiated this action in the Court of Common Pleas of Indiana County, Pennsylvania, on December 3, 2015. Defendant timely removed the action to this Court on January 8, 2016. One week later, Defendant moved to dismiss Plaintiff's Complaint.

## II. Discussion

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard "does not impose a probability requirement." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). However, a pleading must show "more than a sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678. To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal*, the Court must engage in a three-step inquiry, to which it now turns. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

### A. The Elements Necessary to State a Claim

At the first step of this inquiry, the Court must take note of the elements that Plaintiff

"must plead to state her claims." *Id.* Before the Court can do so, though, it must attempt to clarify what type of claim(s) Plaintiff is actually pursuing. She has sent mixed signals in this regard. She alleges in her Complaint that she was constructively discharged (i.e., compelled to resign) in retaliation for filing the PFA against her male co-worker. However, in her Memorandum in Opposition to Defendant's Motion, she disavows any notion that she is making a retaliation claim, though she seems to misunderstand that retaliation is, itself, actionable under Title VII and not some other statute and that something short of filing a formal EEOC charge can amount to protected activity under Title VII's anti-retaliation provision. *See* ECF No. 6 at 3 ("The complaint raises a Title VII cause of action only. Since the Plaintiff filed her charge of discrimination after she was constructively discharged, by definition there cannot be a retaliation claim under federal law."). Instead, she says, she is simply alleging that she was constructively discharged "due to the implementation of the Defendant's policy of favoring male employees over female employees when a female files for a protection from abuse order . . . ." *Id.* at 4-5.

With that in mind, the Complaint could be interpreted as raising a typical Title VII disparate treatment claim, with the lynchpin being Plaintiff's constructive discharge. *See Seeney v. Elwyn, Inc.*, 409 F. App'x 570, 573 (3d Cir. 2011) (explaining that "to show that [the plaintiff's] resignation was an adverse employment action . . ., she had to show that she was forced to resign or constructively discharged under circumstances that give rise to an inference of [] discrimination"). "A Title VII plaintiff may make a claim for discrimination 'under either the pretext theory set forth in *McDonnell Douglas Corp. v. Green* or the mixed-motive theory set forth in *Price Waterhouse v. Hopkins*, under which a plaintiff may show that an employment decision was made based on both legitimate and illegitimate reasons.'" *Connelly*, 809 F.3d at 787 (quoting *Makky v. Chertoff*, 541 F.3d 205, 213 (3d Cir. 2008)). At this stage of the lawsuit,

3

though, a plaintiff is not required to decide "whether she is proceeding under a mixed-motive or pretext theory, nor is she required to establish a *prima facie* case, much less to engage in the sort of burden-shifting rebuttal that *McDonnell Douglas* requires at a later stage in the proceedings." *Id.* at 791. "Thus, for purposes of noting the elements [Plaintiff] must plead to state a disparate treatment claim, [the Court] takes it as given that she may advance either a mixed-motive or a pretext theory." *Id.* That is to say, if the case proceeds to trial, Plaintiff "could ultimately prevail on her disparate treatment claim by proving that her status as a woman was either a 'motivating' or 'determinative' factor in [the] adverse employment action against her." *Id.* But for the purposes of surviving a motion to dismiss, "it is enough for [Plaintiff] to allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Id.*

Notwithstanding Plaintiff's statement in her Memorandum in Opposition, the Complaint could also be interpreted as attempting to raise a Title VII retaliation claim. *See Clegg v. Falcon Plastics, Inc.*, 174 F. App'x 18, 27 (3d Cir. 2006) (explaining that a constructive discharge can "count as an adverse employment action for retaliation purposes"). In addition to barring sex discrimination, Title VII also makes it unlawful to retaliate against an employee for opposing an "unlawful employment practice" or making "a charge, testify[ing], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e–3(a). To state a claim for retaliation, a plaintiff must "plead[] sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements: (1) she engaged in conduct protected by Title VII; (2) the employer took adverse action against her; and (3) a causal link exists between her protected conduct and the employer's adverse action." *Connelly*, 809 F.3d at 789 (citing *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 201 (3d Cir. 1994)). "With respect to 'protected activity,' the anti-retaliation provision of Title VII protects

those who participate in certain Title VII proceedings (the 'participation clause') and those who oppose discrimination made unlawful by Title VII (the 'opposition clause')." *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006) (citing *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 266 (3d Cir. 2006)). "[P]rotected 'opposition' activity includes . . . 'informal protests of discriminatory employment practices, including making complaints to management.'" *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015) (quoting *Curay–Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006)). In assessing whether a plaintiff engaged in protected opposition, the focus must be on "'the message . . . conveyed [by the plaintiff's conduct] rather than the means of conveyance.'" *Id.* (quoting *Moore*, 461 F.3d at 343). "The complaint must allege that the opposition was to discrimination based on a protected category, such as [sex]." *Id.* (citations omitted). Furthermore, the plaintiff must be acting "'under a good faith, reasonable belief that a violation [of Title VII] existed.'" *Id.* (quoting *Moore*, 461 F.3d at 193).

Since Plaintiff resigned from her job, the Court must also take note of what she will eventually need to prove to demonstrate that her resignation amounted to a constructive discharge. Our Court of Appeals employs "an objective test to determine whether an employee can recover on a claim of constructive discharge": the plaintiff must prove "that the employer permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign." *Duffy v. Paper Magic Grp., Inc.*, 265 F.3d 163, 167 (3d Cir. 2001). Several factors are relevant in making this determination, including whether the plaintiff (1) was threatened with discharge; (2) was encouraged to resign; (3) was demoted or suffered a reduction in pay or benefits; (4) was involuntarily transferred to a less desirable position; (5) was given altered job responsibilities; and (6) began receiving unsatisfactory job evaluations. *Clowes v.*

*Allegheny Valley Hosp.*, 991 F.2d 1159, 1161 (3d Cir. 1993).

B.     **Separating Conclusions from Facts**

The Court must now "identify those allegations that, being merely conclusory, are not entitled to the presumption of truth." *Connelly*, 809 F.3d at 789. "[T]he clearest indication that an allegation is conclusory and unworthy of weight . . . is that it embodies a legal point." *Id.* Of course, "'some allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual,'" and so are also not entitled to any weight in the analysis. *Id.* (quoting *Peñalbert–Rosa v. Fortuño–Burset*, 631 F.3d 592, 595 (1st Cir. 2011)). On the other hand, "allegations of historical fact . . . are assumed to be true even if 'unrealistic or nonsensical,' 'chimerical,' or 'extravagantly fanciful.'" *Id.*

The following allegations amount to nothing more than legal conclusions and so must be disregarded: "Defendant violated Title VII of the Civil Rights Act, as amended, by making Plaintiff's job impossible for her to perform, by treating her differently than male employees. . . thereby constructively discharging her, in retaliation for filing a [PFA] against a male employee[,]" Compl. ¶ 4; "[t]hereafter, and in retaliation for filing the pfa, the Defendant began a campaign to force Plaintiff to quit her job[,]" *id.* ¶ 7; "[a]s a result of the intentional sex discrimination of the Defendant, the Plaintiff was forced to leave her employment[,]" *id.* ¶ 9; and "[t]he actions of the Defendant . . . caused the Plaintiff distress, embarrassment, and emotional harm[,]" *id.* ¶ 10. Furthermore, although straddling the line between "historical fact" and "legal conclusion," Plaintiff's allegation that Defendant had a "policy" favoring male employees over female employees is so "'threadbare'" and "'speculative'" that it is not entitled to the presumption of truth. *Connelly*, 809 F.3d at 789. The same goes for Plaintiff's allegation that

"Defendant would not allow her to continue to work." Compl. ¶ 8. Insofar as Plaintiff's allegation that she "was constantly harassed" amounts to a legal conclusion, it must also be ignored, though the Court will accept her averments about the nature of the alleged mistreatment.

### C. Does Plaintiff State a Claim?

Having cast aside Plaintiff's conclusory allegations, the Court must finally assess whether she has set forth enough facts to state a claim under any of the Title VII theories set forth above. *Connelly*, 809 F.3d at 790. Plaintiff's allegations boil down to the following: (1) she sought and obtained a PFA order against a male co-worker; (2) afterwards, she was criticized, watched, and complained about for inconsequential matters; (3) she was told that it was wrong to file the PFA complaint and that she should have let the Defendant "handle" it; (4) Defendant initially promised that the male employee would not work with Plaintiff, but that promise was repeatedly broken; (5) Plaintiff was called into meetings to discuss non-existent problems, which was not done before she filed for the PFA; (6) other employees were not criticized for similar matters; and (7) Plaintiff eventually resigned from her job.

Even accepting these allegations as true and construing them in Plaintiff's favor, they do not give rise to a reasonable expectation that discovery will reveal evidence that she was constructively discharged because of her gender. To be sure, Plaintiff may have sufficiently alleged that her resignation amounted to a constructive discharge. Experiencing some of the treatment that she allegedly experienced – not the least of which was being forced to work with someone against whom she obtained a PFA order – might be enough to cause a reasonable person to quit her job. But, once Plaintiff's conclusory allegations are ignored – e.g., the claim that men were treated differently than her – the facts pled do not permit the inference that any of the actions leading up to Plaintiff's resignation were taken because she is a woman. She does not

7

allege, for example, that she was unreasonably criticized for things that *men* weren't criticized for. She says only that "other employees" – which could include other *women* employees – didn't receive the same criticism that she did. Furthermore, there is no indication from the facts alleged that Defendant treated the male employee against whom Plaintiff obtained the PFA more favorably than Defendant treated Plaintiff. *Cf. Artz v. Cont'l Cas. Co.*, 720 F. Supp. 2d 706, 714 (E.D. Pa. 2010) (holding that the plaintiff stated a discrimination claim where she claimed that a male co-worker who assaulted her was allowed to return to the workplace while she was told that she "could stay, quit, or move to a different floor" and co-worker was not given the same ultimatum); *Sereno-Morales v. Cascade Food Inc.*, 819 F. Supp. 2d 1148, 1150 (D. Or. 2011) (concluding that the plaintiff could survive summary judgment on a sex discrimination claim where she alleged that she was told that she would lose her job if she did not withdraw a restraining order against a co-worker). Finally, while proof of a "policy" favoring men over women would certainly amount to direct evidence of sex discrimination, *Healey v. Southwood Psych. Hosp.*, 78 F.3d 128, 131 (3d Cir. 1996), Plaintiff's allegation regarding this "policy" is wholly conclusory and, thus, not sufficient to carry her disparate treatment claim across the plausibility threshold.

It is a closer call whether Plaintiff's allegations are adequate to state a retaliation claim, though she still comes up short. This claim runs into trouble right out of the gate because, as Defendant argues, the filing of a PFA complaint against a fellow employee is not, *on its own*, a protected activity under Title VII. If, however, Plaintiff "sought a [PFA] order in response to sexually based [conduct] in her workplace," *Toomire v. Town & Country Janitorial Servs., Inc.*, No. CIV. 01-24-B, 2002 WL 140648, at *6 (D.N.H. Jan. 31, 2002), or some other workplace harassment by the her male co-worker, and/or also complained about her co-worker's behavior to

8

her supervisors, it could be found that she was opposing conduct that she reasonably believed violated Title VII. Unfortunately for her, she hasn't made any allegations to that effect. In fact, she offers no explanation why she sought the PFA; it could have been for something totally unrelated to the workplace. Thus, as it now stands, the Complaint fails to plead enough facts to satisfy the protected-activity element.

Because Plaintiff might, with some additional effort, be able to state a valid Title VII claim, either for disparate treatment and/or retaliation[1] (and/or something else, like hostile work environment[2]), she will be granted leave to file an Amended Complaint. If she chooses to do so, she has to be mindful of the guidance the Court has just set forth regarding the law applicable to Title VII claims. And although it is not absolutely required, it would also be helpful if Plaintiff clarified just what type of Title VII claim she is pursuing. To survive another motion to dismiss

---

1. Assuming that Plaintiff will be able substantiate her barebones allegations with facts suggesting that she sought the PFA to combat some sort of workplace mistreatment that she reasonably believed violated Title VII, she will likely be able to make out a retaliation claim. First, some of the conduct she allegedly experienced after obtaining the PFA – e.g., Defendant's violation of its promise to prevent the male employee from working with Plaintiff – could be found to amount to a "materially adverse action," which in the retaliation "'context means" conduct that "well might have dissuaded a reasonable worker from'" engaging in conduct protected by Title VII. *Daniels*, 776 F.3d at 195. And, as already noted, her constructive discharge could likewise suffice. *See Clegg*, 174 F. App'x at 27. Second, although Plaintiff has not pled the timeline within which these actions occurred – for example, how long after she sought the PFA was she forced to resign? – it at least seems as though everything took place within a relatively condensed period of time, such that Plaintiff might be able to establish the requisite causal connection through timing alone. *Daniels*, 776 F.3d at 195. ("To demonstrate a link between protected activity and an employer's adverse action, a plaintiff may rely on the temporal proximity between the two if 'unusually suggestive.'"). Even if a temporal nexus was lacking, though, Plaintiff might still be able to demonstrate a causal connection by pointing to other factors, such as the alleged "intervening antagonism" on the part of Defendant. *Id.*

2. The Court has not considered whether the Complaint states a hostile work environment claim because Plaintiff has not even used any of the terms of art, or buzzwords, typically associated with such a claim. Nor did she attempt to argue in her Memorandum that she met the standard for such a claim. If she intends to pursue a hostile work environment claim in her Amended Complaint, she will have to demonstrate that her workplace was "permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to [have] alter[ed] the conditions of her employment and create an abusive working environment." *Nat'l. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (internal quotation marks omitted). "A hostile-environment constructive discharge claim entails something more: A plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign." *Penn. State Police v. Suders*, 542 U.S. 129, 147 (2004) (citations omitted). "[H]arassment so intolerable as to cause a resignation may be effected through co-worker conduct, unofficial supervisory conduct, or official company acts." *Id.* at 148. If an employee's resignation is triggered by the former – co-worker conduct or unofficial supervisory conduct – then the employer can defend itself from vicarious liability through the *Ellerth/Faragher* affirmative defense. *Id.* at 149.

by Defendant, the Amended Complaint need not be "rich with detail," but, unlike her current Complaint, it must at least "set forth sufficient facts to support plausible claims." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211-12 (3d Cir. 2009).

## IV. <u>Conclusion</u>

For the reasons hereinabove stated, Defendant's Motion to Dismiss will be granted, but Plaintiff will be granted leave to file an Amended Complaint. Plaintiff shall file an Amended Complaint **on or before February 29, 2016**, or this case will be marked closed. An appropriate order follows.

McVerry, S.J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BILLIE JO JOHNS,<br>　　　　　　Plaintiff,<br><br>　　　　v.<br><br>ASMC AMBULANCE SERVICE<br>MANAGEMENT CORPORATION,<br>　　　　　　Defendant. | )<br>)<br>)<br>)<br>) 2:16-cv-36<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER

**AND NOW**, this 8th day of February, 2016, in accordance with the foregoing Memorandum Opinion, it is **ORDERED**, **ADJUDGED**, and **DECREED** that DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED.R.CIV.P. 12(b)(6) (ECF No. 3) is hereby **GRANTED**, and Plaintiff's Complaint is **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff is hereby **GRANTED** leave to file an Amended Complaint. Plaintiff shall file an Amended Complaint **on or before February 29, 2016**, or this case will be marked **CLOSED**.

　　　　　　　　　　　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　　　s/Terrence F. McVerry
　　　　　　　　　　　　　　　　　　Senior United States District Judge

cc:　　**Michael N. Vaporis, Esquire**
　　　　Email: mvaporis@comcast.net

　　　　**Terri Imbarlina Patak, Esquire**
　　　　Email: tpatak@dmclaw.com