IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| BILLIE JO JOHNS, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 2:16-cv-36 |
| | ) |
| ASMC, AMBULANCE SERVICE | ) |
| MANAGEMENT CORPORATION, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Pending before the Court is DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED.R.CIV.P. 12(b)(6) filed by Defendant, Ambulance Service Management Corporation ("ASMC"). (ECF No. 9). The motion has been fully briefed and is ripe for disposition. (ECF Nos. 10, 11).

**I.      Background**

Plaintiff initiated this action in the Court of Common Pleas of Indiana County, Pennsylvania, on December 3, 2015. Defendant timely removed it to this Court on January 8, 2016, and then filed a motion to dismiss, which the Court granted on February 8, 2016, while also granting Plaintiff leave to file an Amended Complaint. Plaintiff has done so.

In her Amended Complaint, Plaintiff alleges that she was employed by Defendant as an emergency medical technician from September 7, 2013, until March 31, 2014. Am. Compl. ¶ 3. On October 2, 2013, she alleges, she obtained a temporary protection from abuse ("PFA") order from the Court of Common Pleas of Indiana County. *Id.* ¶ 4. "The Defendant in the [PFA] action was a male, who was also employed by the Defendant[.]" *Id.* ¶ 5. Thereafter, Plaintiff informed Defendant that she had obtained a PFA order "against a male fellow employee." *Id.* ¶ 6. According to Plaintiff, "Defendant has an unwritten policy of treating female employees who file

1

[PFA] complaints differently from male employees[.]" *Id.* ¶ 7. Specifically, Plaintiff claims, Defendant does "nothing to male employees who file for protection from abuse, but female employees are pressured to either drops the charges, or to quit[.]" *Id.* ¶ 8. Plaintiff alleges that Defendant "implemented its unwritten policy by acting in the following manner to the Plaintiff, because she was a female, and not to similarly situated males:" Plaintiff was told it was wrong for her to file for the PFA order "against an employee, something male employees who file are not told, and that the Plaintiff should have allowed the Defendant 'to handle the matter'[;]" Defendant made "Plaintiff's job impossible for her to perform, by constantly criticizing her job performance for things that previously had not been criticized, and for which males similarly situated were not being criticized[;]" Defendant "[c]onstantly watch[ed] her while working and complain[ed] to her about inconsequential matters, matters for which males were not similarly treated, and which prior to filing the [PFA] complaint, she had not received any complaints[;]" and "Defendant initially promised that the Plaintiff would not be working with the person against whom she had received a [PFA] order, then immediately violated that promise by making her work with the person[.]" *Id.* ¶ 9(A)-(D). As a result of these alleged actions, Plaintiff alleges that she "felt compelled to quit her job with the Defendant and believes that she was constructively discharged[.]" *Id.* ¶ 10.

**II.     Discussion**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard "does not

2

impose a probability requirement." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). However, a pleading must show "more than a sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678. To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal*, the Court must engage in a three-step inquiry, to which it now turns. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

At the first step of this inquiry, the Court must take note of the elements that Plaintiff "must plead to state her claims." *Id.* The Court previously found it unclear just what type of claim Plaintiff was pursuing, but she has since attempted to clarify things. According to Plaintiff,

> [t]he basis for [her] Title VII claim is that the Defendant treats women who file [PFA] actions in state court differently than men, and the treatment given to women is designed to force them to drop their state court action against a fellow male employee, or force the female employee to quit. Men who file are not adversely treated by the Defendant.

Pl.'s Mem. in Opp. at 1. In light of this explanation, the Court will analyze Plaintiff's claim as a Title VII disparate-treatment claim.[1]

Title VII makes it an "unlawful employment practice for an employer . . . to discriminate against any individual . . . , because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). "A Title VII plaintiff may make a claim for discrimination 'under either the pretext theory set forth in *McDonnell Douglas Corp. v. Green* or the mixed-motive theory set forth in *Price Waterhouse v. Hopkins*, under which a plaintiff may show that an employment decision was made based on both legitimate and illegitimate reasons.'" *Connelly*, 809 F.3d at 787 (quoting *Makky v. Chertoff*, 541 F.3d 205, 213 (3d Cir. 2008)). At this stage of

---

1. The Court analyzed Plaintiff's first Complaint as though she might have been attempting to plead a Title VII retaliation claim, as well. Although the allegations in the Complaint were insufficient to do so, particularly with regard to the protected-activity requirement, the Court effectively provided Plaintiff with a roadmap for how she would need to amend her Complaint in order to state a claim. Plaintiff, however, has not made any effort to follow the Court's roadmap. In particular, she has not pled any additional facts about the circumstances under which she obtained the PFA order, such that it might be possible to conclude that she engaged in protected activity under Title VII when she obtained it. Indeed, unlike the first Complaint, the Amended Complaint makes no reference whatsoever to retaliation. Thus, the Court must presume that Plaintiff does not intend to pursue a retaliation claim.

the lawsuit, however, a plaintiff is not required to decide "whether she is proceeding under a mixed-motive or pretext theory, nor is she required to establish a *prima facie* case, much less to engage in the sort of burden-shifting rebuttal that *McDonnell Douglas* requires at a later stage in the proceedings." *Id.* at 791. "Thus, for purposes of noting the elements [Plaintiff] must plead to state a disparate treatment claim, [the Court] takes it as given that she may advance either a mixed-motive or a pretext theory." *Id.* That is to say, if the case proceeds to trial, Plaintiff "could ultimately prevail on her disparate treatment claim by proving that her status as a woman was either a 'motivating' or 'determinative' factor in [the] adverse employment action against her." *Id.* But for the purposes of surviving a motion to dismiss, "it is enough for [Plaintiff] to allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims" – i.e., that she was discriminated against because of her gender. *Id.*

Since Plaintiff resigned from her job, the Court must also take note of what she will eventually have to prove to establish that her resignation amounted to a constructive discharge. Our Court of Appeals employs "an objective test to determine whether an employee can recover on a claim of constructive discharge": the plaintiff must prove "that the employer permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign." *Duffy v. Paper Magic Grp., Inc.*, 265 F.3d 163, 167 (3d Cir. 2001). Several factors are relevant in making this determination, including whether the plaintiff (1) was threatened with discharge; (2) was encouraged to resign; (3) was demoted or suffered a reduction in pay or benefits; (4) was involuntarily transferred to a less desirable position; (5) was given altered job responsibilities; and (6) began receiving unsatisfactory job evaluations. *Clowes v. Allegheny Valley Hosp.*, 991 F.2d 1159, 1161 (3d Cir. 1993).

Now, the Court must "identify those allegations that, being merely conclusory, are not

entitled to the presumption of truth." *Connelly*, 809 F.3d at 789. "[T]he clearest indication that an allegation is conclusory and unworthy of weight . . . is that it embodies a legal point." *Id.* Of course, "'some allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual,'" and so are also not entitled to any weight in the analysis. *Id.* (quoting *Peñalbert–Rosa v. Fortuño–Burset*, 631 F.3d 592, 595 (1st Cir. 2011)). On the other hand, "allegations of historical fact . . . are assumed to be true even if 'unrealistic or nonsensical,' 'chimerical,' or 'extravagantly fanciful.'" *Id.*

Although Plaintiff claims that Defendant has an "unwritten policy of treating female employees who file protection from abuse complaints differently from male employees," Am. Compl. ¶ 7, and that "[i]t is the policy of the Defendant to do nothing to male employees who file for protection from abuse, but female employees are pressured to either drops the charges, or to quit[,]" *id.* ¶ 8, she has not pled any facts to support these assertions. In other words, Plaintiff has not pled anything about any incidents when a male employee obtained a PFA order and received treatment different from that which Plaintiff allegedly received. Instead, she only alleges facts regarding her own isolated experience with Defendant. Thus, Plaintiff's allegations regarding Defendant's alleged "unwritten policy" are conclusory and must be disregarded. The same goes for Plaintiff's allegation that "[i]n violation of Title VII of the Civil Rights Act, as amended, Defendant implemented its policy in the following manner to the Plaintiff, because she was a female, and not to similarly situated males." *Id.* ¶ 9. The following allegations are also conclusory and not entitled to the presumption of truth: Defendant made "Plaintiff's job impossible for her to perform" and criticized her for things "for which males similarly situated were not being criticized," *id.* ¶ 9(B); Defendant did not raise complaints about "inconsequential

matters" with male employees, *Id.* ¶ 9(C); Defendant acted "with the specific intent of forcing the Plaintiff to quit her job[,]" *id.* ¶ 9(D); "[b]ecause of the actions taken above against the Plaintiff because she was a female who had filed a protection from abuse order against a fellow employee, actions not taken against male employees who filed for protection from abuse, and actions not taken prior to filing the protection from abuse action, the Plaintiff felt compelled to quit her job[,]" *id.* ¶ 10; and Defendant's actions "caused the Plaintiff distress, embarrassment, and emotional harm[,]" *id.* ¶ 11.

Finally, the Court must assess whether Plaintiff's non-conclusory allegations are enough to state a claim under Title VII. As it did with regard to Plaintiff's first Complaint, the Court will assume that Plaintiff has adequately pled that her resignation amounted to a constructive discharge. However, when the aforementioned conclusory allegations are cast aside, the remaining allegations do not give rise to a reasonable expectation that discovery will reveal evidence that any of the alleged actions prior to Plaintiff's resignation were taken because she is a woman. As already noted, Plaintiff has offered nothing in the way of facts to support her claim that male employees who obtain PFA orders are treated more favorably than female employees who do so. Nor has she pled any facts to support her claim that similarly situated men were not criticized for things for which she was criticized; she has not even attempted to identify one similarly situated male employee to attempt to buttress her claim.[2] *See Finn v. Porter's Pharmacy*, No. CIV.A. 15-661, 2015 WL 5098657, at *3 (W.D. Pa. Aug. 31, 2015) (concluding that the plaintiff failed to state a claim because she did not allege "what other employees were

---

2. The Court recognizes that Plaintiff "was not required to plead comparator evidence to support an inference of discrimination." *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 703 n.2 (3d Cir. 2010). As the Court of Appeals has explained, "[s]uch an inference could be supported in a number of ways, including, but not limited to, comparator evidence, evidence of similar [sex] discrimination of other employees, or direct evidence of discrimination from statements or actions by her supervisors suggesting [gender-based] animus." *Id.* The Court focuses on the lack of comparators only because Plaintiff has clearly attempted to bring her claim within this framework by suggesting that unidentified male employees who obtained PFA orders were not treated in the same manner that she was allegedly treated.

treated more favorably . . ., when or by whom"). In addition, it is still not possible to infer from the facts alleged that Defendant treated the male employee against whom Plaintiff obtained the PFA order more favorably than it treated Plaintiff. *Cf. Artz v. Cont'l Cas. Co.*, 720 F. Supp. 2d 706, 714 (E.D. Pa. 2010) (holding that the plaintiff stated a discrimination claim where she alleged that a male co-worker who assaulted her was allowed to return to the workplace while she was told that she "could stay, quit, or move to a different floor" and her co-worker was not given the same ultimatum). Even assuming that the actions were taken because Plaintiff sought and obtained the PFA order, this simply does not, without more, amount to sex discrimination under Title VII. Therefore, Defendant's motion to dismiss will be granted.

### III.     Conclusion

Plaintiff has been given two opportunities to plead a claim for which relief can be granted. She has failed both times. Accordingly, for the reasons hereinabove stated, DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED.R.CIV.P. 12(b)(6) (ECF No. 9) will be **GRANTED**, and this case will be **DISMISSED WITH PREJUDICE**. An appropriate order follows.

McVerry, S.J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BILLIE JO JOHNS,<br>          Plaintiff,<br><br>          v.<br><br>ASMC AMBULANCE SERVICE<br>MANAGEMENT CORPORATION,<br>          Defendant. | )<br>)<br>)<br>) 2:16-cv-36<br>)<br>)<br>)<br>)<br>) |

## ORDER OF COURT

**AND NOW**, this 29th day of March, 2016, in accordance with the foregoing Memorandum Opinion, it is **ORDERED**, **ADJUDGED**, and **DECREED** that DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED.R.CIV.P. 12(b)(6) (ECF No. 9) is hereby **GRANTED**, and this case is **DISMISSED WITH PREJUDICE**. Accordingly, the Clerk of Courts shall docket this case **CLOSED**.

                                              BY THE COURT:

                                              s/Terrence F. McVerry
                                              Senior United States District Judge

cc:      **Michael N. Vaporis, Esquire**
           Email: mvaporis@comcast.net

           **Terri Imbarlina Patak, Esquire**
           Email: tpatak@dmclaw.com